RECEIVED
APR 19 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| DALE M. McCALL | CIVIL ACTION NO. 2:17-0189 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| PRUDENTIAL INS. CO. OF AMERICA | MAG. JUDGE KATHLEEN KAY |

## MEMORANDUM RULING

Before the court is "Defendant's Motion to Dismiss or to Transfer Venue" (R. #10) wherein defendant, The Prudential Insurance Company of America ("Prudential") seeks to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Prudential maintains that Plaintiff's complaint should be dismissed because each of his claims is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

## FACTUAL ALLEGATIONS

In his Complaint,[2] Plaintiff, Dale McCall, makes the following allegations. Mr. McCall, a resident of Westlake, Louisiana, is a plan participant and beneficiary of a group disability plan sponsored by Lake Charles Pilots, Inc. ("LCP") and an insured participant of a group disability policy[3] (the "Policy") issued by Prudential. Mr. McCall alleges he is disabled under the terms of the Policy; he alleges that he filed a claim for long-term disability benefits with Prudential who

---

[1] In the same motion, Defendant alternatively sought to have the Complaint either dismissed or transferred for improper venue. The case was originally filed in the Eastern District of Louisiana and that court chose to transfer the case to this court without deciding the merits of Defendant's motion to dismiss pursuant to Rule 12(b)(6). R. #18.
[2] R. #1.
[3] Policy No. GD-52473-LA.

1

has denied said benefits. Mr. McCall is seeking past and future disability benefits under the terms of the Policy, plus interest, penalties, damages for physical and emotional distress, reasonable attorney fees and court costs under Louisiana state law and the Louisiana Insurance Code.

Mr. McCall alleges the plan is a non-ERISA plan (or exempt from ERISA) because it is allegedly a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."[4] The basis for Mr. McCall's position is that LCP was established by legislative acts, namely Louisiana Revised Statutes § § 34:1073 and 34:1075.

## RULE 12(b)(6) STANDARD

Fed. R. Civ. P. 8(a)(2) requires that pleadings which state one or more claims for relief must contain "...a short and plain statement of the claim showing that the pleader is entitled to relief..." This "notice pleading" requirement is balanced against Fed. R. Civ. P. 12(b)(6), which provides that a court may dismiss one or more claims when the pleader fails to state a claim upon which relief may be granted.

For the purpose of considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled factual allegations as true and must view them in the light most favorable to the plaintiff.[5] The pleading must allege facts which, when taken as true, raise the pleader's claim. A motion to dismiss for failure to state a claim should be denied unless "it appears to a

---

[4] 29 U.S.C. § 1002(32).
[5] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) (internal citations omitted).

*certainty* that the plaintiff would be entitled to no relief under any state of facts" alleged in the petition.[6]

Only those facts which are well-pleaded and state a "plausible claim for relief" must be accepted.[7] A claim is plausible when the court can reasonably infer from the facts that the defendant is liable to the plaintiff; a claim is not plausible when it only states conclusions of a "formulaic recitation of the elements of a cause of action."[8] However, even those facts which are extremely doubtful are to be assumed correct.[9]

## LAW AND ANALYSIS

In its motion, Prudential seeks to have the state law claims dismissed because the employee benefit plan is preempted by ERISA. Prudential informs the court that not only do the facts establish that the plan is governed by ERISA, but also the booklet issued by Prudential describing the benefits provided, expressly states that the benefits at issue are offered pursuant to ERISA.[10]

ERISA comprehensively regulates employee benefit plans.[11] If a participant in an employee benefit plan could have brought his or her claim under ERISA, it completely preempts his or her cause(s) of action, and the Court has subject matter jurisdiction over the case.[12] Whether a participant could have brought their suit under ERISA turns on whether their

---

[6] Banco Contintental v. Curtiss Nat'l Bank of Miami Springs, 406 F.2d 510, 514 (1969)(quoting Arthur H. Richland Co. v. Harper, 302 F.2d 324, 325 (5th Cir. 1962)(citing Des Isles v. Evans, 200 F.2d 614, 615 (5th Cir. 1952); Millet v. Godchaux Sugars, Inc., 241 F.2d 264, 265 (5th Cir. 1957)).
[7] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[8] Whitley v. Hanna, 726 F.3d 631, 638 (2009)(quoting Ashcroft, 556 U.S. at 678).
[9] Twombly, 550 U.S. at 555; Lindquist v. City of Pasadena, 525 F.3d 383, 386 (5th Cir. 2008).
[10] Defendant's exhibit A, pp. 47-52, Short Term Disability Coverage, Long Term Disability Coverage.
[11] Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488 (2004).
[12] Id. at 209-210.

employee benefit plan is an "ERISA plan."[13] If it is not, ERISA does not apply and this court lacks subject matter jurisdiction.[14]

To better understand the relationship between the ABP and LCP, the court will rely on the following explanation found in CITGO Petroleum Corp. v. Louisiana Pub. Serv. Comm'n,[15] cited by Plaintiff in his opposition:

> The ten pilot members of Lake Charles Pilots, Inc., the duly incorporated association of the Associated Branch Pilots of the Port of Lake Charles, (LCPI), have sole authorization to pilot seagoing vessels on the navigable streams, channels, and boundary waters, within the Intracoastal Canal, Calcasieu and Sabine Rivers, bars, and passes," except specified routes along the Mississippi River. La.Rev.Stat.34:1072, 1073. Pursuant to La. Rev. Stat. 34:1121-1127, the Associated Branch Pilots of the Port of Lake Charles Fee Commission (Fee Commission) has the exclusive right to establish the fees and rates charged by the LCPI pilots for pilotage service. The Fee Commission is comprised of eight members, four of whom represent the interests of the river pilots (the pilot fee commissioners) and four of whom represent the interests of the steamship industry (the industry fee commissioners).

*Is LCP, Inc. a governmental entity?*

Mr. McCall worked for LCP as a Pilot Boat Captain. LCP is a voluntary association "authorized by La. R.S. 34:1073 and 1075." LCP is wholly owned by its member pilots.[16] Mr. McCall maintains that LCP is a "governmental entity" because it was "establish by legislative act."[17] Whereas, Mr. McCall contends that pursuant to 29 U.S.C. § 1002(32), the plan is exempt from ERISA, Prudential maintains that the long term disability plan is governed by ERISA.

---

[13] Hanson v. Continental Ins. Co., 940 F.2d 971, 976 (5th Cir. 1991).
[14] Id.
[15] 815 So.2d 19, 21 (La.2002).
[16] Defendant's Exhibit C, Declaration of Meredith Formon, ¶ 18.
[17] R. #1, Complaint, ¶ 8.

ERISA expressly exempts "governmental plans" from its coverage.[18] Prudential argues that even though the pilots perform duties sanctioned by legislative acts, LCP is a private business corporation, and not a governmental entity. In other words, Prudential posits that these statutes did not create LCP, but merely permitted river pilots to form associations and create a state-sanctioned monopoly for each locality.

Louisiana Revised Statute 34:1073 provides as follows:

> There shall be a body of pilots known as the Associated Branch Pilots for the Port of Lake Charles whose duty it shall be to pilot seagoing vessels within the state of Louisiana, on all navigable streams, canals, channels, rivers, and boundary waters within the Intracoastal Canal, Calcasieu, and Sabine Rivers, and across the bars and passes...

Louisiana Revised Statute 34:1075 provides that:

> The pilots may form themselves into associations as they may see fit, not in conflict with any special or general law of the State or of the United States, except that since competitive associations of pilots is detrimental to the public interest, only one association of pilots shall be formed in each locality served by the same general waterway.

A plan may be considered to be a governmental plan where a party can prove that it was either (1) established by a governmental entity that falls within that definition, or (2) that it is currently maintained by such an entity.[19] Louisiana Revised Statute § 34:1075 permits river pilots to form associations and create a state-sanctioned monopoly for each locality. However, allowing an association to form does not equate to establishing or creating an association. Even though Louisiana Revised Statute § 34:1073 permits a body of pilots to form, the statute does

---

[18] 29 U.S.C. § 1003(b). A "governmental plan" is a plan "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).
[19] Hightower v. Tex. Hosp. Ass'n, 65 F.3d 443, 450 (5th Cir. 1995).

not create or establish an association. The Fifth Circuit has stated that boat pilot associations are "long-standing, peculiarly conducted institutions recognized by statute, owned and governed by their member pilots, and serving as a clearinghouse and dispatching service for river pilots."[20] Accordingly, we find that LCP, Inc. is not a governmental entity.

*Is the Plan sponsored or maintained by a political subdivision of the State of Louisiana?*

In his complaint, Plaintiff alleges that the LCP's disability plan is a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"[21] and therefore exempt from ERISA.

Prudential maintains that the facts alleged in the complaint along with the documents incorporated therein establish that the long-term disability plan sponsored by LCP is not a government plan and is thus subject to ERISA.

Plaintiff argues that it is a subdivision of the Associated Branch Pilots that is allowed to exist solely because of Louisiana Revised Statute 34:1075. Alternatively, Plaintiff contends that LCP is a political subdivision under ERISA relying on National Labor Relations Board v. Natural Gas Utility District of Hawkins County, Tenn.[22] to support its position. The NRLB test contains two prongs, only one of which need be satisfied.[23] An entity is deemed a political subdivision if it is "'either (1) created directly by the state, so as to constitute departments or administrative arms

---

[20] Coleman v. New Orleans and Baton Rouge SS Pilots Ass'n, 437 F.3d 471, 473 (5th Cir. 2006). See also Gillis v. Louisiana, 294 F.3d 755 (5th Cir. 2002)("LCP, Inc. is a corporation owned by river pilots.")
[21] 29 U.S.C. § 1002(32).
[22] 91 S.Ct. 1746, (1971).
[23] Shannon v. Shannon, 965 F.2d 542 (7th Cir. 1992).

6

of the governments, or (2) administered by individuals who are responsible to public officials or to the general electorate."[24] Plaintiff maintains that LCP is administered by individuals who are responsible to public officials or to the general electorate. Plaintiff remarks that the articles of incorporation specify that the purpose of the company is to perform services for the River Pilots of the Port of Lake Charles [a/k/a] the Associated Branch created by legislative act La. R.S. 34:1073(2012). . .[25] The articles further specify that shareholders of LCP must be duly qualified and commissioned River Port Pilots who have taken an oath of office and furnished the bond required by Louisiana Revised Statute 34:1071 et seq. . . [and] and that in performing their professional piloting services, the Shareholders shall at all times be considered public officers appointed by the governor and independent contractors."[26] Therefore, Plaintiff maintains that LCP is administered by bar pilots who are public officials and/or who are responsible to public officials making it a political subdivision under the second prong of the NLRB test.

Prudential remarks that plaintiff is conflating LCP with the Associated Branch of Pilots ("ABP"). Prudential admits that ABP was established by Louisiana Revised Statute § 34:1073, but asserts that LCP was not *established* by § 34:1073 or by § 34:1075. Prudential contends that Louisiana Revised Statute § 34:1075 permits pilots in any one area to form a private organization, and that the statute does not compel such formation, but provides a state-protected monopoly for associations of pilots.[27] Prudential notes that ABP is not the sponsor of the plan, nor does it play any role in the plan administration. Prudential maintains that LCP is a privately owned and

---

[24] Id. quoting National Labor Relations Board, 402 U.S. at 604,-05 (1971).
[25] Plaintiff's exhibit A, Restated Articles of Incorporation, p. 2, Article III.
[26] Id. p. 4, Article VIII.
[27] The statute provides that pilots may "form themselves into associations as they may see fit, ..." and that "only one association of pilots shall be formed in each locality." La. R.S. § 34:1075.

operated corporation that performs administrative services for pilots which was not established by any governmental entity, and furthermore, ABP is not involved in the benefit plan.

Prudential relies on Coleman[28] wherein the court in discussing LCP, stated that "the associations, along with the . . . Boards and the governor, play an almost monopolistic gate-keeper role in determining who will ultimately work as a river pilot; it is also true that the associations (through their members) set rules and regulations directly affecting the daily work of each pilot." The pilots navigate "according to their own professional judgment" and "have ultimate control of the associations' rules and regulations that bind them."[29] LCP was formed to "perform[] administrative pilotage services for Lake Charles pilots.[30] Prudential remarks that although the Board, partially appointed by the governor, adopts general regulations for the pilotage industry, the Fifth Circuit has found that the actual "administration" of the pilot associations, like LCP, is handled by their own members. The Board serves as a "gate-keeper" to service a pilot, but does not administer or regulate the pilot associations.[31] Furthermore, there is no language in the statutes that gives the government power to control the operations of the pilot associations and the associations depend on the pilotage fees paid to each pilot, and not on state funding. Thus, Prudential maintains that the plan sponsored by LCP is not a government plan, and furthermore, LCP is not a political subdivision of the State.

Prudential notes that the Articles of Incorporation was signed by private individuals, not governmental officials, and that statements in articles of incorporation cannot cause a private

---

[28] Coleman, 437 F.3d at 482.
[29] Id.
[30] Defendants' exhibit B, p. 23.
[31] Coleman, .437 F.3d at 482.

individual to become a public official. Louisiana Revised Statute 42:1 defines a public officer as "any person holding a public office in the state and a "public office" means any "state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state."[32] Prudential remarks that the LCP shareholders were not elected or appointed to any state, district, parish, or municipal office, nor any boards or commission established by the laws of the state. Prudential notes that even though the Articles of Incorporation state that "in performing their professional piloting services, the Shareholders shall be considered public officers," but also that the corporation shall have no role in those services,[33] and that "[t]he Corporation may not itself engage in the business of piloting . . . ."[34] The LCP articles of incorporation further states that LCP provides only administrative functions; "billing, collecting, scheduling, chartering, and dispatching" of boat pilots.[35]

Plaintiff argues that LCP is a political subdivision because the articles of incorporation place limits on shareholders to only those who are "duly qualified and commissioned River Port Pilots who have taken an oath of office and furnished the bond required" by law.[36] In response, Prudential argues that an entity which limits its members to those with certain government approved licenses has no bearing on whether the entity itself is a political subdivision which is not what Congress intended in enacting ERISA.[37] In other words, a company cannot through its

---

[32] La. R.S. 42:1.
[33] R. #10-3, p. 16.
[34] Id. p. 18.
[35] R. #10-3, p. 16.
[36] R. #12, p.4.
[37] See, e.g. Alley v. Resolution Trust Corp., 984 F.2d 1201, 1206 (D.C. Cir. 1993)("We find no indication that Congress meant the governmental plan exemption to reach an entity that related to its employees as would a private business—an entity whose employees are not subject to laws governing public employees generally.")

articles of incorporation, dictate a force of law that makes the private entity become a political subdivision of the state.

Prudential further informs the court of a lawsuit wherein LCP sued the State of Louisiana for a declaratory judgment that the state could not regulate LCP more than three miles off the coast, which indicates that LCP is indeed a separate entity and not a subdivision of the state.[38] In that case, LCP argued that the State had no authority over it beyond three miles of the shoreline. Prudential notes that the Fifth Circuit determined that the state could regulate LCP because the Supreme Court has "upheld the authority of states to enact laws regulating pilotage where Congress has declined to do so,"[39] but not because LCP was determined to be a political subdivision of the state.

The court agrees with Prudential that Plaintiff has cited nothing to this court to indicate that LCP is a political subdivision of the state, nor is it administered by individuals who are responsible to public officials or the general electorate in their roles administering the corporation.

*Is LCP sponsored or maintained by an agency or instrumentality of the State of Louisiana?*

Factors the court considers as to whether LCP is an agency or instrumentality of one or more states or political subdivisions are as follows:

> (1) Whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested

---
[38] See Gillis v. Louisiana, 294 F.3d 755 (5th Cir 2002).
[39] Id. at 762.

in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.[40]

Plaintiff contends that the purpose of LCP is to perform the same duties of the ABP which is to perform a governmental function and ensure the safety of Louisiana waterways as well as to facilitate commerce in Louisiana. Plaintiff argues that LCP exists to perform the duties of the ABP and is therefore an extension of the government and notes that ABP has the exclusive right to establish the fees and rates charged by LCP for pilotage services. Citing CITGO Petroleum Corp. v. Louisiana Pub. Serv. Comm'n.[41]

Plaintiff informs the court that the Legislature, through Louisiana Revised Statute 34:1075 (2012), has ensured that LCP, even though it is a private corporation, will have no competition in performing the duties of ABP, thus, it lacks the type of financial autonomy that private businesses have, again reminding the court that LCP shareholders are at all times considered public officers appointed by the governor and independent contractors.

Next, plaintiff maintains that control and supervision of LCP is vested in public authority or authorities. The articles specify that "the Corporation shall have no authority to control the Shareholders in the rendition of their professional services. . . Control shall be reserved to each respective Shareholder pilot, subject to the authority of the Calcasieu River Waterway Board of River Port Pilot Commissioners and Examiners."[42]

---

[40] Scott v Unum Life Ins. Co. of America, 2010 WL 114404 at *5 (W.D. La. 2010).
[41] 815 So. 2d 19, 21 (La.2002)..
[42] Plaintiffs' exhibit A, p. 4, Article VIII.

LCP is the benefit plan sponsor of the long-term disability plan. Plaintiff, the beneficiary is a river boat captain. LCP was permitted to be organized as a private association of pilots under Louisiana Revised Statutes 34:1073 and 1075. It was formed for the sole purpose of performing services for its river boat pilots. However, government officials did not sign or draft the articles of incorporation; the shareholders of the private corporation signed and drafted the articles of incorporation. The articles of incorporation limits the ownership of LCP to individuals who are commissioned pilots. The associations (through their members) set rules and regulations that directly affect the daily work of each pilot, however, the pilots themselves work independently and have ultimate control over the associations' rules and regulations that bind them.[43]

The pilot-shareholders must be licensed by the State of Louisiana through its regulatory scheme to be commissioned river pilots which qualifies them to be a LCP member/shareholder. The articles of incorporation state that LCP "may not itself engage in the business of piloting or sell pilotage services directly but may only facilitate pilotage by its shareholder pilots,"[44] LCP does not have the "authority to control the Shareholders in the rendition of their professional services."[45] While Plaintiff argues and cites cases wherein the operation of a ferry is a governmental function, the LCP does not operate the piloting services. LCP only provides administrative services. The court finds that LCP, which performs administrative functions for its members, is not an instrumentality of the state, nor does it perform a governmental function.

---

[43] Coleman, 437 F.3d at 482.
[44] R. #10-3, p.16.
[45] Id. p. 20.

## CONCLUSION

For the reasons set forth hereinabove, the court concludes that the plan sponsored by LCP is preempted by ERISA, and thus the instant complaint, which asserts only state law claims, will be dismissed with prejudice.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 19th day of April, 2017.

_____
**JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE**